increase in earnings, is due to an increase in stockholders' equity that resulted from the issuance of stock to acquire Corporate Healthcare Strategies (d/b/a StoudtAdvisors) and Pennsylvania State Bank in 2004 and the related impact of purchase accounting. Return on tangible equity was 20.61 percent in 2005, compared to 18.21 percent in 2004.

*   *   *   *

Sterling's financial services segments non-interest income increased $6.2 million, or 14.2 percent. The acquisition of Corporate Healthcare Strategies in June 2004 contributed $2.4 million to the increase. The remaining increase was primarily due to higher rental income on operating leases of $2.5 million and an increase of approximately $1.2 million in gains on sale of finance receivables.

*   *   *   *

The allowance for loan losses of $21.0 million, represented 1.00 percent of total loans at December 31, 2005, compared to $18.9 million, or 0.99 percent at December 31, 2004. Non-performing loans as a percent of total loans decreased 2 basis points from 0.24 percent at December 31, 2004, to 0.22 percent at December 31, 2005. This decrease was attributable to strong credit quality, lower delinquency trends and strong loan growth during 2005.

42. On March 15, 2006 Sterling filed its annual report for 2005 on Form 10-K with the SEC reiterating and repeating the information in the above press release. The Form 10-K was signed and separately certified by defendant Moyer pursuant to Sections 302 & 906 of SOX.

43. On April 25, 2006 Sterling issued a materially false and misleading press release announcing its Q1 FY 2006 results and "record ... earnings". The press release states in relevant part:

> Sterling Financial Corporation of Lancaster, Pa.,
> Announces Record First Quarter Earnings
>
> LANCASTER, PA (April 25, 2006) – Sterling Financial Corporation (NASDAQ: SLFI) reported strong earnings for the first quarter ended March 31, 2006.
>
> "Building on the progress that we achieved during 2005 and previous years, we are pleased to begin 2006 with a strong first quarter – one highlighted by continued growth in

revenues, and the alignment of our Financial Services Group with our Banking Services Group" said J. Roger Moyer, Jr., President and Chief Executive Officer, Sterling Financial Corporation. "Our strength is attributable to our consistency in performance and deliberate execution of a strategy that focuses on the successes of our customers, our shareholders and our employees."

\*   \*   \*   \*

Sterling's net income was $10.2 million for the quarter ended March 31, 2006, an increase of $0.9 million or 9.5 percent from the first quarter of 2005. Diluted earnings per share totaled $0.35 for the first quarter of 2006 versus $0.32 for the same period last year, an increase of 9.4 percent. Return on assets for the first quarter of 2006 was 1.41 percent, compared to 1.38 percent in 2005. For the first quarter of 2006, return on realized equity and return on tangible equity were 13.88 percent and 20.26 percent, respectively, compared to 13.82 percent and 20.30 percent, respectively, in 2005.

44. On May 10, 2006 Sterling filed its Q1 2006 report on Form 10-Q with the SEC reiterating and repeating the information in the above press release. The Form 10-Q was signed and separately certified by defendant Moyer pursuant to Sections 302 & 906 of SOX.

45. On May 17, 2006 MaryAnn Detwiler tendered her resignation as Chief Accounting Officer of Sterling.

46. On July 25, 2006 Sterling issued a materially false and misleading press release announcing its Q2 FY 2006 results and "record earnings". The press release states in relevant part:

Sterling Financial Corporation of Lancaster, PA Announces Record Earnings

LANCASTER, PA (July 25, 2006) – Sterling Financial Corporation (NASDAQ: SLFI) reported record earnings for the quarter and six months ended June 30, 2006.

"We delivered another quarter of solid performance," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "While we have experienced some modest compression in our net interest margin, our company is well

positioned to meet a challenging interest rate environment as we continue to focus on revenue growth by delivering a broad portfolio of complementary financial services through our banks and financial services group companies."

\* \* \* \*

Sterling's net income was $10.3 million for the quarter ended June 30, 2006, an increase of $597,000, or 6.2 percent from the second quarter of 2005. Diluted earnings per share totaled $0.35 for the second quarter of 2006 versus $0.33 for the same period in 2005, an increase of 6.1 percent. Return on assets for the second quarter of 2006 was 1.37 percent as compared to 1.39 percent for the same period last year, while return on average realized equity and return on average tangible equity were 13.71 percent and 20.55 percent, respectively for the second quarter of 2006 as compared to 14.00 percent and 21.10 percent, respectively for the same period last year.

Total revenue, comprised of net interest income and non-interest income excluding net gains on sale of securities, totaled $48.5 million for the second quarter of 2006, an increase of $3.1 million or 6.9 percent from the same period last year. Meanwhile, non-interest expense totaling $32.8 million for the second quarter of 2006 increased $2.0 million or 6.6 percent from the second quarter of 2005. As a result, the efficiency ratio improved from 60.86 percent for the three months ended June 30, 2005 to 60.45 percent for the second quarter of 2006.

Sterling has continued its trend of increasing net interest income, from $28.3 million for the second quarter of 2005 to $30.4 million in 2006, a 7.4 percent increase. The growth in net interest income has resulted primarily from the continued organic growth in loans and deposits, particularly higher yielding loans, including commercial loans and finance receivables. The net interest margin was 4.77 percent for the second quarter of 2006 as compared to 4.83 percent for the three months ended March 31, 2006, and 4.81 percent for the quarter ended June 30, 2005. While Sterling has been successful in managing its net interest margin by attracting new households and growing its loans and deposits, it has also experienced pressure in its net interest margin primarily resulting from the relatively flat yield curve, when compared to historical levels, and increased pricing competition on loans and deposits.

\* \* \* \*

Sterling's net income was $20.4 million for the six months ended June 30, 2006, an increase of $1.5 million, or 7.8 percent from the same period in 2005. Diluted earnings per share totaled $0.70 for the six months ended June 30, 2006, versus $0.65 for 2005, an increase of 7.7 percent. Return on assets, return on average realized equity and return on average tangible equity were 1.39 percent, 13.79 percent, and 20.40 percent, respectively,

21

for the six months ended June 30, 2006, as compared to 1.39 percent, 13.92 percent and 20.59 percent, respectively, for the same period last year.

Total revenue of $95.9 million for the first six months of 2006 increased $7.3 million or 8.3 percent from the same period last year and exceeded growth in expenses of $4.2 million or 6.8 percent, for the same comparison period. This resulted in an improvement in Sterling's efficiency ratio from 61.67 percent for the first six months of 2005 to 60.64 percent for the first six months of 2006.

Sterling's net interest income improved from $55.9 million for the six months ended June 30, 2005 to $60.1 million in 2006, a 7.6 percent increase. This increase was driven primarily by growth in loans and deposits, partially offset by a decrease of three basis points in the net interest margin to 4.80 percent as a result of the interest rate environment and pricing competition during the first six months of 2006.

* * * *

Credit quality remained strong in the second quarter of 2006. The allowance for loan losses of $22.4 million represented 1.00 percent of total loans at June 30, 2006 compared to $19.1 million, or 0.95 percent at June 30, 2005 and $21.0 million, or 1.00 percent at December 31, 2005. Non-performing loans to total loans were 0.22 percent at June 30, 2006 versus 0.19 percent at June 30, 2005 and 0.22 percent at December 31, 2005.

47. On August 8, 2006 Sterling filed its Q2 2006 report on Form 10-Q with the SEC reiterating and repeating the information in the above press release. The Form 10-Q signed and separately certified by defendant Moyer pursuant to Sections 302 & 906 of SOX.

48. On October 24, 2006 Sterling issued a materially false and misleading press release announcing its Q3 FY 2006 results. The press release states in relevant part:

Sterling Financial Corporation of Lancaster, Pa., Announces 3rd Quarter Earnings

LANCASTER, PA (October 24, 2006) – Sterling Financial Corporation (NASDAQ: SLFI) reported earnings for the quarter and nine months ended September 30, 2006.

* * * *

Sterling's net income for the third quarter ended September 30, 2006, was $5.6 million or $0.19 per diluted share, compared to $10.1 million or $0.34 per diluted share for the same

22

period last year. Included in Sterling's third quarter 2006 net income was a non-cash impairment charge totaling $5.2 million ($8.0 million pre-tax). The impairment charge was related to Sterling's affiliate, Corporate Healthcare Strategies, LLC's (CHS), goodwill and intangible assets and reflects management's current estimate of the expected impairment (see non-interest expense section for a more detailed explanation). Historically, this affiliate has not been a material contributor to Sterling's earnings or earnings per share. Excluding this charge, Sterling's third quarter 2006 net income would have been $10.8 million, an increase of 6.8 percent from the same period last year, while diluted earnings per share would have been $0.37, an increase of 8.8 percent from the same quarter in the prior year.

\*   \*   \*   \*

... J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. " Our customer acquisition strategy continued to strengthen as we saw growth in both our loans and deposits. Referrals among our diverse lines of business also are helping us drive revenue."

\*   \*   \*   \*

Sterling's net income was $26.0 million for the nine months ended September 30, 2006, or $0.89 per diluted share, compared to $29.0 million or $0.99 per diluted share for the same period last year. Excluding the impact of the impairment charge, net income would have been $31.2 million, an increase of 7.4 percent from the same period last year, while diluted earnings per share would have been $1.07 for the nine months ended September 30, 2006, an increase of 8.1 percent from the same period last year. Return on assets, return on average realized equity and return on average tangible equity were 1.16 percent, 11.52 percent, and 17.25 percent, respectively, for the nine months ended September 30, 2006. Excluding the impact of the impairment charge, return on assets, return on average realized equity and return on average tangible equity would have been 1.39 percent, 13.82 percent, and 20.55 percent, respectively, as compared to 1.39 percent, 13.97 percent and 20.63 percent, respectively, for the same period last year.

\*   \*   \*   \*

Credit quality remained strong in the third quarter of 2006. Non-performing loans to total loans were 0.19 percent at September 30, 2006, versus 0.17 percent at September 30, 2005, and 0.22 percent at December 31, 2005. The allowance for loan losses of $22.8 million represented 1.00 percent of total loans at September 30, 2006, compared to $20.2 million, or 0.96 percent at September 30, 2005 and $21.0 million, or 1.00 percent at December 31, 2005.

49.   On November 8, 2006 Sterling filed its Q3 2006 report on Form 10-Q with the SEC reiterating and repeating the information in the above press release. The Form 10-Q signed and separately certified by defendant Moyer pursuant to Sections 302 & 906 of SOX

50.   On January 23, 2007 Sterling issued a materially false and misleading press release announcing its Q4 and FY 2006 results. The press release states in relevant part:

> Sterling Financial Corporation of Lancaster, Pa., Announces Fourth Quarter and Year End Earnings
>
> LANCASTER, PA (January 23, 2007) – Sterling Financial Corporation (NASDAQ: SLFI) reported earnings for the quarter and year ended December 31, 2006.
>
> "2006 was a challenging year for our company and for the financial services industry," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "I am pleased that we continued to advance our core customer strategies and, as a result, were able to turn in a solid financial performance, considering the interest rate environment and competitive pressures in our markets."
>
> \*     \*     \*     \*
>
> Sterling's net income for the quarter ended December 31, 2006 was $10.4 million or $0.35 per diluted share, compared to $10.2 million or $0.35 per diluted share for the same period last year. Fourth quarter 2006 and 2005 net income included the impact of discontinued operations totaling net after-tax losses of $215,000 or $0.01 per diluted share, and $13,000 or $0.00 per diluted share, respectively. On December 31, 2006 Sterling divested three related lines of business associated with its insurance segment, Corporate Healthcare Strategies, LLC ("CHS"), Professional Services Group and certain insurance assets of its property and casualty insurance agency, Lancaster Insurance Group, LLC. All prior period results included herein have been reclassified to conform to the current presentation which displays the operating results of the divested businesses as discontinued operations. These reclassifications had no effect on net income or stockholders' equity. Unless otherwise noted, the remaining discussion and tabular data relate only to Sterling's continuing operations.
>
> Sterling's net income from continuing operations for the quarter ended December 31, 2006 was $10.7 million, an increase of $427,000, or 4.2 percent from the fourth quarter of 2005. Diluted earnings per share totaled $0.36 for the fourth quarter of 2006 versus $0.35 for the same period in 2005, an increase of 2.9 percent. Return on average assets and return on average realized equity were 1.32 percent and 13.27 percent, respectively,

for the fourth quarter of 2006, compared to 1.40 percent and 13.98 percent, respectively, for the same period last year. Return on average tangible equity was 18.93 percent for the quarter ended December 31, 2006, compared to 20.22 percent for the same period last year.

*   *   *   *

Sterling's net income for 2006 was $36.5 million or $1.24 per diluted share, compared to $39.3 million or $1.34 per diluted share for 2005. Included in Sterling's 2006 and 2005 net income was discontinued operations totaling a net after-tax loss of $5.1 million or $0.17 per diluted share, and net income of $210,000 or $0.01 per diluted share, respectively.

Sterling's net income from continuing operations was $41.6 million for the year ended December 31, 2006, an increase of $2.5 million, or 6.5 percent as compared to year ended December 31, 2005. Diluted earnings per share totaled $1.41 for 2006 versus $1.33 for 2005 an increase of 6.0 percent. Return on average assets, return on average realized equity and return on average tangible equity were 1.36 percent, 13.59 percent, and 19.76 percent, respectively, for 2006, as compared to 1.38 percent, 13.89 percent and 20.13 percent, respectively, for the prior year.

51.   On March 16, 2007 the Company filed its annual report for 2006 on Form 10-K with the SEC reiterating and repeating the information in the above press release. The Form 10-K signed and separately certified by defendants Moyer and Lima pursuant to Sections 302 & 906 of SOX.

**UNLAWFUL SCHEME TO DEFRAUD SO AS TO INFLATE STERLING'S STOCK PRICE IN VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULES 10b-5(a) AND (c), THEREUNDER**

25

52.    Throughout the Class Period EFI and certain of its officers and directors, employed devices, schemes, and artifices to defraud Plaintiff and other investors in Sterling stock by knowingly providing materially false and misleading financial information concerning EFI to persons responsible for the financial reporting for Sterling. EFI and certain of its officers and directors knew and/or recklessly disregarded that providing such information would cause Sterling to issue materially false and misleading financial statements with the SEC and the investing public. As alleged more fully herein, when the truth regarding the scheme began to materialize piecemeal, Plaintiff and the class were damaged. Had Plaintiffs and the Class been aware of the scheme they would not have purchased Sterling's stock at the artificially inflated prices that they did or would not have purchased the stock at all.

53.    On April 19, 2006 Sterling issued a press release announcing a postponement of the Company's Q1 2007 financial results. The press release states in relevant part:

> Sterling Financial Corporation of Lancaster, Pa., Postpones First Quarter Earnings Release
> Thursday April 19, 4:40 pm ET
>
> LANCASTER, Pa., April 19 /PRNewswire-FirstCall/ -- Sterling Financial Corporation (Nasdaq: SLFI - News) is postponing the release of its earnings for the quarter ended March 31, 2007. The release was originally scheduled for April 24th.
>
> Sterling's management has received information suggesting irregularities related to certain financing contracts in one of its financial services group companies, Equipment Finance LLC (EFI). EFI provides commercial financing for the soft pulp logging and land-clearing industries, primarily in the southeastern United States.
>
> Management moved immediately to notify the Audit Committee and Board of Directors about this information, and the Audit Committee engaged nationally recognized, expert accountants and legal counsel to conduct an independent investigation.

"As you would expect, Sterling is taking this matter very seriously," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "We are committing all necessary resources to complete the investigation in a thorough, timely and professional manner and to take any remedial steps necessary."

At this time, Sterling has not determined the financial impact of any irregularities. Further investigation is required for a final determination of earnings for the first quarter, which may also make it necessary to delay the filing of the first quarter Form 10-Q. New dates will be announced as soon as they become available.

54.  On April 30, 2007, before market open, Sterling announced that it expects to restate its previously issued financial statements for FY 2004 through and including FY 2006 and the interim periods. Sterling announced that the prospective restatement may require Sterling and its affiliates to raise "additional capital" and that based on Sterling's investigation two senior executives of EFI, have been placed on leave. The press release states in relevant part:

> Sterling Financial Corporation of Lancaster, Pa., Expects To Restate Financial Statements and Postpones 2007 Annual Meeting
> Monday April 30, 9:02 am ET
>
> LANCASTER, Pa., April 30 /PRNewswire-FirstCall/ -- Sterling Financial Corporation (Nasdaq: SLFI - News) announced today that as a result of information obtained from an internal investigation, it expects to be restating financial statements for the years 2004 through 2006 and is postponing its 2007 annual shareholder meeting.
>
> On April 19th, Sterling Financial Corporation announced that it had received information suggesting irregularities in certain financing contracts in one of its financial services group companies, Equipment Finance LLC (EFI). EFI provides commercial financing for the soft pulp logging and land-clearing industries, primarily in the southeastern United States. Accordingly, Sterling postponed the release of earnings for the quarter ended March 31, 2007.

Taking this matter very seriously, management moved immediately to notify the Audit Committee and Board of Directors about this information, and the Audit Committee engaged nationally recognized, expert accountants and legal counsel to conduct an independent investigation. Sterling is committing all necessary resources to complete the investigation in a thorough, timely and professional manner and to take any corrective steps necessary.

Based on preliminary information from the investigation and management's own review, Sterling's Board of Directors concluded on April 29, 2007, that the Corporation's previously issued financial statements, the reports on the audited financial statements and related internal controls issued by its independent registered public accounting firm, and all earnings releases issued for 2004 through 2006, should no longer be relied upon due to the expected material impact of these irregularities. Sterling expects to restate or amend these financial statements once the extent of the impact is known, which may require the Corporation and its affiliates to raise additional capital. The impact of the irregularities may also be material for years prior to 2004, depending on the results of the ongoing investigation.

In connection with the investigation, two senior executives of EFI have been placed on leave.

Sterling is postponing its 2007 annual shareholder meeting, originally scheduled for May 8, 2007, and the Corporation does not expect that it will be able to file its Form 10-Q by the due date of May 10th.

"I want to assure shareholders, customers and the public that Sterling is moving aggressively to take corrective action on the issues that have emerged during this investigation. We are taking steps to strengthen EFI's management structure and internal control processes immediately," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation.

Sterling has implemented changes in EFI's management structure, installing an acting Chief Operating Officer. The Chief Executive Officer of EFI has voluntarily relinquished his role as President, CEO, and EFI Board member; however, he will be available to assist the company, in a non-management role, at the request of management. In addition, EFI's Board of Managers has been augmented by the addition of two new members. Internal control processes and procedures are being reviewed and enhanced.

"We understand that our shareholders, customers, employees and communities may have questions. We ask for your patience, and continued loyalty, as we complete our investigation," added Moyer.

> Sterling and its affiliates are committed to delivering excellent relationship-based service, quality and care for our clients and customers, a proud tradition that is the hallmark of Sterling.

55. The April 30, 2007 announcement shocked the market. On April 27, 2007, the prior trading day, the Company's stock closed at $20.72 on 37,100 shares traded. The April 30, 2007 announcement caused Sterling's stock to closed trading on April 30, 2007 at $16.65 a share, down $4.07 a share or 19%.

56. Upon information and belief, the individuals placed on leave at EFI were Michael J. Schlager--Manager and Senior Vice President and Joseph Braas—Manager and Senior Vice President. On April 26, 2007, in a filing with the Florida Secretary of State, EFI deleted these individuals from their annual report.

57. Sterling's stock continued to fall. On May 1, 2007, Sterling's stock closed down an additional $2.00 a share or 12%.

58.     On May 24, 2007 investors first learned about the details of the scheme. After market-close, Sterling issued an announcement entitled "Sterling Financial of Lancaster, PA Announces Initial Investigation Findings; Significant, Sophisticated Loan Scheme Uncovered." According to the announcement the investigation conducted by Sterling has "revealed evidence of a sophisticated loan scheme, orchestrated deliberately by certain EFI officers and employees over an extended period of time, to conceal credit delinquencies, falsify financing contracts and related documents, and subvert Sterling's established internal controls and reporting systems." Sterling also described this conduct as "deceptive activities." The announcement also states that Sterling was expected to take a cumulative after-tax charge to its FY 2006 financial statements of $145 million to $165 million. The announcement states in relevant part:

> LANCASTER, Pa., May 24 /PRNewswire-FirstCall/ -- Sterling Financial Corporation of Lancaster, PA (Nasdaq: SLFI - News) announced today, based on information from a still ongoing investigation, that previously reported irregularities in certain financing contracts in one of Sterling's financial services affiliates, Equipment Finance LLC (EFI), are a direct result of collusion by a group of EFI employees. Sterling is committing all necessary resources to complete the investigation in a thorough, timely and professional manner and to take all necessary corrective steps.
>
> Sterling's investigation to date has revealed evidence of a sophisticated loan scheme, orchestrated deliberately by certain EFI officers and employees over an extended period of time, to conceal credit delinquencies, falsify financing contracts and related documents, and subvert Sterling's established internal controls and reporting systems. The scheme was able to avoid detection until recently due to the depth and breadth of the collusion. In other words, employees at different seniority levels and functional areas were apparently involved.
>
> These deceptive activities were limited to EFI and no customer accounts in Sterling's banks or other affiliates were involved.

30

The Board of Directors, upon the recommendation of management through the Disclosure Committee, and with the concurrence of the Audit Committee, concluded on May 23 that Sterling will be required to record, under U.S. generally accepted accounting principles, a material impairment of certain assets of EFI. These assets include EFI financing contracts, interest associated with those contracts, and potentially goodwill attributable to EFI. While Sterling has not determined the annual periods in which the impairment occurred, Sterling currently expects to record a cumulative after-tax charge to the December 31, 2006 financial statements of approximately $145 million to $165 million, based upon the results of the investigation's preliminary findings. However, at this point in the investigation, Sterling has not determined the final financial impact, including any potential recoveries, such as insurance and collateral.

Sterling is working closely with its regulators and all appropriate federal authorities on the ongoing investigation.

"Our investigation has now revealed evidence that Sterling and its shareholders were subjected to a significant, sophisticated loan scheme, specifically designed to deceive and avoid detection," said J. Roger Moyer, Jr., president and chief executive officer of Sterling Financial Corporation. "Our priority now is to address the problem and continue serving our customers. Decisive actions have been taken to reinforce oversight and centralize operational management at EFI."

As a result of our investigation, Sterling implemented immediate changes in EFI's management structure. Five EFI employees have now been terminated, including the Chief Operating Officer and Executive Vice President, and Sterling installed an acting Chief Operating Officer. Further, a special collections team has been deployed to maximize recoveries from the impaired contracts.

\* \* \* \*

"Having taken immediate action, we are now focused on developing a long- term plan," Moyer added. "Sterling, through its affiliates, has a successful history tracing back more than 150 years, and we're currently developing a strategy for the future to rebuild shareholder value."

\* \* \* \*

Moyer continued, "This has certainly been a difficult time for all of us at Sterling, but among our organization's greatest assets are the more than 1,100 hardworking employees, strong franchises and market position, and loyal customers. All of our banking and other offices continue to provide the same exceptional service that customers have relied on for over 150 years."

31

PROOF OF PLAINTIFFS' RELIANCE- FRAUD ON THE MARKET

59.     Plaintiff and members of the Class reasonably relied on the misleading statements set forth above in purchasing Sterling Stock during the Class Period.

60.     Plaintiff relies upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

    a. Defendants made misleading public statements or failed to disclose material facts during the Class Period;

    b. the omissions and misleading statements were material;

    c. the securities of the Company traded in an efficient market;

    d. the misleading statements and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

    e. Plaintiff and members of the Class purchased their Sterling securities between the time defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted facts or misleading statements.

61.     At all relevant times, the market for Sterling's securities was an efficient market for the following reasons, among others:

    (a) Sterling's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, an efficient and automated market;

    (b) As a regulated issuer, Sterling filed periodic public reports with the SEC and the NASDAQ and/or NASD;

(c) Sterling regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d) Sterling's stock price reacted quickly in response to material news about the Company;

(e) During the Class Period, Sterling was eligible to file registration statements on Form S-3 with the SEC;

(f) Several well-known third party stock analysts issued reports on the Company during the Class Period; and

(g) Numerous firms acted as market makers in Sterling stock during the Class Period.

62. As a result of the foregoing, the market for Sterling's securities promptly digested current information regarding Sterling from all publicly available sources and reflected such information in Sterling's stock price. Under these circumstances, all purchasers of Sterling's securities during the Class Period suffered similar injury through their purchase of Sterling's securities at artificially inflated prices and a presumption of reliance applies.

## NO STATUTORY SAFE HARBOR

63. The statutory safe harbor providing for forward-looking statements under certain circumstances does not apply to any of the false statements pleaded in this complaint, because none of the statements pleaded herein was identified as "forward-looking" when made. Nor did

meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the statements accompany those statements. To the extent that the statutory safe harbor does apply to any statements pleaded herein and those statements are deemed to be forward-looking, Defendants are liable for those false forward-looking statements, because at the time each of those statements were made the speaker actually knew the forward-looking statement was false and/or the statement was authorized and/or approved by an executive officer of the Company, who actually knew that those statements were false when made.

<u>COUNT I</u>
<u>AGAINST DEFENDANTS EFI AND GRANER FOR VIOLATION OF
SECTION 10(B) OF THE EXCHANGE ACT AND
RULE 10B-5(A) AND (C) OF THE SECURITIES AND EXCHANGE COMMISSION</u>

64.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     This Count is asserted against Defendants EFI and Graner and is based upon Section 10(b) of the 1934 Act, 15 U.S.C. §78j(b), and Rule 10b-5(a) and (c) promulgated thereunder.

66.     Throughout the Class Period, defendant EFI acted through Graner, its President, CEO, and Manager. The misconduct, willfulness, motive, knowledge and recklessness is therefore imputed to EFI. In the alternative, EFI is liable for the actions of Graner and certain of EFI's other officers, directors, and employees under the doctrine of respondeat superior.

67.     During the Class Period, EFI, Graner, along with other EFI directors, officers and employees engaged in a common plan, scheme, and unlawful course of conduct, pursuant to

which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon plaintiffs and the other members of the Class in an effort artificially inflate the stock of Sterling. EFI, Graner, along with other EFI directors, officers and employees knowingly and/or recklessly engaged in a sophisticated loan scheme described herein, with knowledge or reckless disregard that such a scheme would cause Sterling to issue materially false and misleading financial information about Sterling to Plaintiff and the investing public.

68. In ignorance of the defendants' misrepresentations described above and the deceptive and manipulative devices and contrivances employed by said defendants, Plaintiff and the other members of the Class relied, to their detriment, on the integrity of the market price of the stock in purchasing Sterling common stock. Had plaintiffs and the other members of the Class known the truth, they would not have purchased said shares or would not have purchased them at the inflated prices that were paid.

69. Plaintiff and the other members of the Class have suffered substantial damages as a result of the wrongs herein alleged in an amount to be proved at trial.

70. By reason of the foregoing, defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) promulgated thereunder in that they employed devices, schemes, and artifices to defraud; and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class in connection with their purchases of Sterling stock during the Class Period.

71. This action is being brought within two years after the discovery of the unlawful

deceptive scheme and within five years of their Nature stock purchases for which they seek recompense.

## COUNT II
### AGAINST THE CONTROLLING DEFENDANTS FOR VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT

72. Plaintiffs repeat and reallege each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

73. Each of the Controlling Defendants, by virtue of their management positions, directorships, stock ownership and/or specific acts described above, were, at the time of the wrongs alleged herein, controlling persons of EFI within the meaning of Section 20(a) of the 1934 Act.

74. The Controlling Defendants had the power and influence and exercised the same to cause EFI to engage in the illegal conduct and practices complained of herein.

75. By reason of the conduct alleged in Count I of the Complaint, the Controlling Defendants are liable for the aforesaid wrongful conduct, and are liable to Plaintiffs and to the other members of the Class for the substantial damages which they suffered in connection with their purchases of Sterling common stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

a. Declaring this action to be a proper plaintiff class action maintainable pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring plaintiff to be proper a representative of the Class;

  b. Awarding Plaintiff and other members of the Class damages together with interest thereon;

  c. Awarding Plaintiff and the other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

  d. Awarding Plaintiff and the members of the Class such other and further relief as may be just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury of all issues.

DATED: May 25, 2007

*/s/*

THE ROSEN LAW FIRM, P.A.
Phillip Kim, Esq. (PK 9384)
Laurence Rosen, Esq. (LR 5733)
350 Fifth Avenue, Suite 5508
New York, NY 10118
Tel: (212) 686-1060
Fax: (212) 202-3827
Counsel for Plaintiffs