## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVE MACRINA, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>J. RODGER MOYER, JR., THOMAS DAUTRICH, GEORGE W. GRANER, EQUIPMENT FINANCE, LLC, and BANK OF LANCASTER, N.A.,<br><br>       Defendants. | Civil Action No. 07-CV-4108<br><br>ECF Filed |

(Captions continued on subsequent page)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE SAN ANTONIO FIRE & POLICE PENSION FUND AND THE EMPLOYEES RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS  FOR (1) APPOINTMENT AS LEAD PLAINTIFFS; (2) APPROVAL OF THEIR SELECTION OF COUNSEL AS CO-LEAD COUNSEL FOR THE CLASS; AND (3) CONSOLIDATION OF ALL RELATED ACTIONS**

BRIAN JOHNSON, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

STERLING FINANCIAL CORP., J. RODGER MOYER, JR, J. BRADLEY SCOVILL and TITO L. LIMA,

        Defendants.

Civil Action No. 07-CV-4652

CASTLE STRATEGIC TRADING LLC, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

J. RODGER MOYER, JR., THOMAS DAUTRICH, GEORGE W. GRANER, EQUIPMENT FINANCE, LLC, and BANK OF LANCASTER, N.A.,

        Defendants.

Civil Action No. 07-CV-5594

JEFFREY M. COOLEY, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

STERLING FINANCIAL CORP., J. RODGER MOYER, JR, J. BRADLEY SCOVILL and TITO L. LIMA,

        Defendants.

Civil Action No. 07-CV-5671

The San Antonio Fire & Police Pension Fund ("San Antonio") and the Employees Retirement System of the City of St. Louis ("St. Louis") respectfully submit this memorandum of law in support of their motion (i) to be appointed as Lead Plaintiffs pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), (ii) for approval of their selection of the law firms of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio") as Co-Lead Counsel for the Class, and (iii) for consolidation of all related securities class actions pursuant to Fed. R. Civ. P. 42(a).

## PRELIMINARY STATEMENT

This class action lawsuit arises from allegations that Sterling Financial Corporation ("Sterling" or the "Company") and certain of its senior executives (collectively, "Defendants") violated the federal securities laws. During the period from April 27, 2004 to May 25, 2007 (the "Class Period"), Defendants disseminated materially false and misleading information to investors related to the Company's financial condition and performance while suppressing and/or recklessly ignoring information known to them about the Company's finances. Defendants' misstatements artificially inflated the price of Sterling's publicly traded securities and, as the true information was revealed, caused substantial harm to investors in the Company.

San Antonio and St. Louis believe that they are the most adequate plaintiffs under the PSLRA to serve as the Lead Plaintiffs on behalf of investors harmed by Defendants' misconduct. San Antonio and St. Louis believe that they have the largest financial interest of any adequate movant in the relief sought in this action by virtue of the nearly

$400,000 in collective losses they suffered on their investment in Sterling securities. San Antonio and St. Louis are both sophisticated institutional investors and are therefore paradigmatic Lead Plaintiffs under the PSLRA.[1]

### Factual and Procedural Background

Sterling is a diversified financial services company based in Lancaster, Pennsylvania and trading on the NASDAQ exchange under the symbol "SLFI." During the class period, Defendants artificially inflated the public trading price of Sterling's public securities by engaging in and failing to disclose a material loan scheme—operated through the Company's affiliate, Equipment Finance LLC ("EFI")—to conceal credit delinquencies and falsify financing contracts. The Company has itself described the misconduct at issue as a "sophisticated loan scheme, orchestrated deliberately by certain EFI officers and employees over an extended period of time."

The investing public began to learn the true state of affairs at Sterling when, on April 19, 2007, Sterling issued a press release announcing that the Company's release of earnings data of the quarter ending March 31, 2007 would be postponed and that certain "irregularities" at the EFI subsidiary had been identified and were being investigated. Then, before the markets opened on April 30, 2007, Sterling announced for the first time that the Company expected to restate financials from at least as far back as 2004 due to accounting "irregularities." The announcement also revealed that the Company would not file its quarterly report on time and that two senior executives of EFI would be placed on leave in connection with the Company's investigation. The news caused a massive

---

[1] Copies of the Certifications of San Antonio and St. Louis, including their transactions in Sterling securities during the Class Period, are attached as Exhibits A and B, respectively, to the Declaration of Gerald H. Silk ("Silk Decl."), as required by the PSLRA. In addition, charts setting forth the transactions and losses of each of San Antonio and St. Louis are attached as Exhibits C and D, respectively, to the Silk Decl.

decline over two business days from a close of $27.72 per share on Friday, April 27, 2007, to only $14.65 per share on May 1, 2007. Finally, on May 24, 2007, the Company revealed that these "irregularities" were, in fact, the product of intentional misconduct—"a direct result of collusion by a group of EFI employees." As defendant J. Roger Moyer, Jr.—the Company's Chief Executive Officer—stated in the press release, the Company's "shareholders were subjected to a significant, sophisticated loan scheme, specifically designed to deceive and avoid detection." The May 24, 2007 press release revealed further that, as a result of this misconduct, Sterling would be required to record a "material impairment" of EFI assets, that the Company would be forced to discontinue paying its regular dividend, and that five employees of EFI, including its Chief Operating Officer and Executive Vice President, were being terminated. The news caused Sterling's stock to lose another $6.19 per share to close at $9.97 per share on May 25, 2007.

Numerous securities class actions were filed in the wake of these disclosures in both the Southern District of New York and the Eastern District of Pennsylvania. The first of these was filed in the Southern District of New York on May 25, 2007 in an action styled *Macrina v. Moyer*, No. 07-CV-4108. The first filing in the Eastern District of Pennsylvania, styled *Buckwalter v. Sterling Financial Corporation*, No. 07-CV-2171, occurred on May 29, 2007. Notices of the pendency of these securities class actions were published thereafter, as required by the PSLRA, announcing July 24, 2007 as the deadline for submitting applications to serve as Lead Plaintiff in the action.[2] With the filing of this

---

[2] Copies of the notices of pendency are attached as Exhibit E to the Silk Decl.

motion, San Antonio and St. Louis satisfy the statutory deadline to move to be appointed

as Lead Plaintiffs in this action.[3]

## ARGUMENT

### I.    San Antonio and St. Louis Should Be Appointed Lead Plaintiffs

San Antonio and St. Louis respectfully submit that they should be appointed Lead

Plaintiffs as the movants "most capable of adequately representing the interests of class

members."  15 U.S.C. § 78u-4(a)(3)(B).  The PSLRA establishes a presumption that the

"most adequate plaintiff" is the person or group that "has the largest financial interest in

the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the

Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B); *see also In re AOL Time*

*Warner, Inc. Sec. & "ERISA" Litig.*, 2003 U.S. Dist. LEXIS 145, at *4 (S.D.N.Y. Jan. 8,

2003) ("*In re AOL*"); *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184,

187-89 (S.D.N.Y. 2006); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 97-98 (S.D.N.Y.

2005).

#### a.    San Antonio and St. Louis Believe That They Have the Largest Financial Interest in the Relief Sought by the Class

San Antonio and St. Louis should be appointed Lead Plaintiffs because they have

the largest financial interest asserted by any adequate movant in the relief sought by the

Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii). Courts in the Second Circuit generally look to

four factors in determining which movant has the largest financial interest in the

litigation.  These factors—sometimes called the "*Lax* Factors" after *Lax v. First Merch.*

---

[3] San Antonio and St. Louis have also caused to be filed a similar motion seeking appointment as Lead
Plaintiff in the actions pending in the Eastern District of Pennsylvania.

*Acceptance Corp.*[4]—are (i) the number of gross shares purchased during the class period; (ii) the number of net shares purchased during the class period; (iii) the total net funds expended during the class period; and (iv) the approximate losses suffered. *See, e.g., Glauser*, 236 F.R.D. at 187; *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 100. In light of each of these factors, San Antonio and St. Louis believe that they have the largest financial interest in the outcome of this lawsuit.

San Antonio and St. Louis collectively purchased 34,520 shares of Sterling on a gross basis during the Class Period. During the same period, San Antonio and St. Louis had collective net purchases of 12,190 shares. In addition, San Antonio and St. Louis had collective net expenditures on Sterling securities of $515,101.82 during the Class Period. In connection with their transactions in Sterling securities, San Antonio and St. Louis suffered collective approximate losses of $393,409.49, whether calculated on a FIFO ("first in, first out") or LIFO ("last in, first out") basis, which are believed to be the largest losses suffered by any adequate Lead Plaintiff movant in this action.[5] The magnitude of San Antonio's and St. Louis' individual and collective financial interest in this litigation can be summarized as follows:

---

[4] *See Lax v. First Merch. Acceptance Corp.*, No. 97-Civ-2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).

[5] FIFO and LIFO are the two principal accepted methods for calculating approximate losses for purposes of appointing a Lead Plaintiff under the PSLRA. Under the FIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the earliest and moving chronologically forward (hence, "first in, first out"). Under the alternative LIFO method, the sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward (hence, "last in, first out").

| *Lax* Factor | San Antonio's Position | St. Louis 's Position | Collective Position |
|---|---|---|---|
| **Gross Purchases:** | 20,620 | 13,900 | 34,520 |
| **Net Purchases:** | 7,050 | 5,140 | 12,190 |
| **Net Expenditures:** | $302,500.24 | $212,601.58 | $515,101.82 |
| **Approximate Loss:** | $232,120.31 | $161,289.18 | $393,409.49 |

Accordingly, San Antonio and St. Louis believe that they have the largest financial interest of any qualified movant seeking appointment as Lead Plaintiff.[6]

> **b.      San Antonio and St. Louis Otherwise Satisfy the Requirements of Rule 23**

San Antonio and St. Louis should be appointed Lead Plaintiffs because they also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  On a motion to serve as Lead Plaintiff, the movant "need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23."  *Glauser v. EVCI Career Colleges Holdings Corp.*, 236 F.R.D. at 188; *see also Fishbury, Ltd. v. Connetics Corp.*, No. 06-11496, 2006 U.S. Dist. LEXIS 90696, at *6-7 (S.D.N.Y. Dec. 14, 2006).  San Antonio and St. Louis unquestionably satisfy both requirements in this case.

San Antonio's and St. Louis' claims are typical of the claims of other Class members.  "Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise."  *In re Initial Pub. Offering*

---

[6] San Antonio and St. Louis have come together as public institutional investors to jointly serve as Lead Plaintiffs in the interests of the Class and have each selected a law firm to serve as Co-Lead Counsel for the Class.  Should the Court prefer to appoint a single Lead Plaintiff, San Antonio and St. Louis respectfully submit that the Court should consider the financial interest of each of the movants individually, and appoint San Antonio as Lead Plaintiff in light of its financial interest in this matter.

*Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002).  San Antonio's and St. Louis' claims in

this action arise from the very same course of misconduct at Sterling as the claims of the

other Class members—*i.e.*, the artificial inflation and consequent market correction of

Sterling's securities caused by the Company's fraudulent public disclosures.  *See, e.g.*,

*Glauser*, 236 F.R.D. at 188-89 (finding a Lead Plaintiff movant's claim to be typical

where the movant "like all class members, (1) purchased or acquired EVCI securities

during the proposed class period, (2) at prices allegedly artificially inflated by

Defendants' false and misleading statements and/or omissions, and (3) suffered damages

thereby."); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 102 (finding a Lead Plaintiff

movant's claim to be typical where "[m]embers of the class claim to have been injured by

a fraudulent inflation of eSpeed's stock price" and the movant "makes the same claim.").

San Antonio and St. Louis likewise satisfy the adequacy requirement of Rule 23.

The adequacy requirement is satisfied where "the class members' interests are not

antagonistic to one another;" "the class has a sufficient interest in the outcome of the case

to ensure vigorous advocacy," and where "class counsel is qualified, experienced, and

generally able to conduct the litigation."  *In re Initial Public Offering Sec. Litig.*, 214

F.R.D. at 121.  San Antonio and St. Louis satisfy each of these elements of the adequacy

requirement.

San Antonio and St. Louis are adequate to represent the Class because their

interests are perfectly aligned with those of the other Class members and are not

antagonistic in any way.  Indeed, San Antonio and St. Louis seek identical relief on

identical claims based on identical legal theories.  There are, furthermore, no facts

suggesting that any actual or potential conflict of interest or other antagonism exists between San Antonio and St. Louis and other Class members.

San Antonio and St. Louis have also submitted Certifications affirming their understanding of the duties owed to Class members and their commitment to oversee the prosecution of this Class action.[7]  Through their Certifications, San Antonio and St. Louis each accept the fiduciary obligations they will assume if appointed Lead Plaintiffs in this action.

Moreover, San Antonio and St. Louis are each a classic example of the sort of Lead Plaintiffs envisioned by Congress in its enactment of the PSLRA—sophisticated institutional investors with a real financial interest in the litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34, 104th Cong. 1st Sess. (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts by improving the quality of representation in securities class actions"); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 180 (3d Cir. 2005) (holding that the PSLRA establishes "a paradigm in which the plaintiff with the largest stake in the case, usually a large and sophisticated institution, is accorded the status of lead plaintiff and assigned the right to appoint and duty to monitor lead counsel for the class"); *Glauser*, 236 F.R.D. at 188.  Finally, San Antonio and St. Louis have demonstrated their adequacy through the selection of Bernstein Litowitz and Berman DeValerio as counsel to represent the Class.  As discussed more fully below, Bernstein Litowitz and Berman DeValerio are highly qualified and

---

[7] *See* Silk Decl., Exhibits A and B.

experienced in the area of securities class action litigation and have repeatedly demonstrated their ability to conduct complex securities class action litigation effectively.

II.     **The Court Should Approve San Antonio's and St. Louis' Selection of Lead Counsel**

The Court should approve San Antonio' and St. Louis' choice of the law firm of Bernstein Litowitz and Berman DeValerio to serve as Co-Lead Counsel.  Pursuant to Section 21D(a)(3)(B)(v) of the PSLRA, codified at 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is to select and retain Lead Counsel to represent the Class, subject to Court approval.  San Antonio and St. Louis have selected the law firms of Bernstein Litowitz and Berman DeValerio.  Bernstein Litowitz and Berman DeValerio have worked together in other securities class actions and are prepared to work together here on behalf of the Class.

Bernstein Litowitz is among the preeminent securities class action law firms in the country, having been appointed sole or co-lead counsel in numerous complex securities class actions in this District and around the country.[8]  Bernstein Litowitz served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-CV-3288 (DLC) (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class.  Other recent cases in which Bernstein Litowitz has been recognized as an appropriate lead or co-lead counsel since the passage of the PSLRA, include, for example, *In re Refco, Inc. Securities Litigation*, No. 05 Civ. 8626 (GEL) (S.D.N.Y.) and *In re Nortel Networks*

---

[8] Bernstein Litowitz's Firm Biography is attached as Exhibit F to the Silk Decl.  Berman DaValerio's Firm Biography is attached as Exhibit G to the Silk Decl.

*Corp. Securities Litigation*, No. 05-MD-1659 (LAP) (S.D.N.Y.), which was recently resolved for over $1.3 billion.

Berman DeValerio is a 36-lawyer firm with offices in San Francisco, Boston and West Palm Beach with extensive experience representing plaintiffs in securities class action litigation. The firm acts as monitoring, evaluation, and/or litigation counsel for some 60 public and Taft-Hartley pension funds, including three of the five largest pension funds in the nation. Berman DeValerio served as counsel to the court-appointed bondholder representatives in the *WorldCom, Inc. Securities Litigation*. More recently, Berman DeValerio served as one of three Co-Lead Counsel with Bernstein Litowitz in the *El Paso Securities Litigation* which resulted in a settlement for the class of $285 million.

Accordingly, the Court should approve the selection by San Antonio and St. Louis of Bernstein Litowitz and Berman DeValerio as Lead Counsel for the Class.

### III.    The Related Actions Should be Consolidated

There are at least four securities class action complaints pending in the Southern District of New York on behalf of investors in Sterling securities:

| Case Number | Abbreviated Case Name | Date Filed |
|---|---|---|
| 07-CV-4108 | *Macrina v. Moyer, et al*. | May 25, 2007 |
| 07-CV-4652 | *Johnson v. Sterling Financial Corp., et al.* | June 1, 2007 |
| 07-CV-5594 | *Castle Strategic Trading, Inc. v. Moyer, et al.* | June 12, 2007 |
| 07-CV-5671 | *Cooley, et al. v. Sterling Financial Corp., et al.* | June 14, 2007 |

All of these actions present virtually identical factual and legal issues, as they all arise out of the same alleged misstatements by Sterling. Accordingly, consolidation is

appropriate here.  *See, e.g., Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced.") (internal citation omitted).[9]

## CONCLUSION

For the foregoing reasons, San Antonio and St. Louis respectfully request that the Court: (i) appoint San Antonio and St. Louis as Lead Plaintiffs pursuant to the PSLRA; (ii) approve their selection of Bernstein Litowitz Berger & Grossmann LLP and Berman DeValerio Pease Tabacco Burt & Pucillo as Co-Lead Counsel for the Class; (iii) consolidate all related actions; and (iv) grant such other and further relief as the Court may deem just and proper.

Dated: July 24, 2007                         Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER &
    GROSSMANN LLP**


/s/ Gerald H. Silk
Gerald H. Silk (GS-4565)
Noam Mandel (NM-0203)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
(212) 554-1400

Counsel for the Fire & Police Pension Fund,
San Antonio, and Proposed Co-Lead
Counsel for the Class

**BERMAN DEVALERIO PEASE
    TABACCO BURT & PUCILLO**


Glen DeValerio

---

[9] In addition, at least four related actions have also been filed in the Eastern District of Pennsylvania.

Leslie R. Stern
One Liberty Square
Boston, MA 02109
(617) 542-8300

Counsel for the Employees Retirement
System of the City of St. Louis and
Proposed Co-Lead Counsel for the Class

12