**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                                          )
STEVE MACRINA, Individually And On Behalf )
Of All Others Similarly Situated,             )
                                                          )   Civil Action No. 07cv4108 (JGK)
                           Plaintiff,         )
                                                          )   <u>CLASS ACTION</u>
           v.                                 )
                                                          )   ECF Case
J. ROGER MOYER, JR., THOMAS DAUTRICH, )
GEORGE W. GRANER, EQUIPMENT FINANCE, )
LLC and BANK OF LANCASTER, N.A.,       )
                                                          )
                           Defendants.        )
_____)

[Additional Captions Below]

**MEMORANDUM OF CASTLE STRATEGIC TRADING, LLC**
**IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD**
**PLAINTIFF AND IN OPPOSITION TO ALL OTHER LEAD PLAINTIFF MOTIONS**

| | |
|---|---|
| BRIAN JOHNSON, Individually And On Behalf Of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> vs.<br><br>STERLING FINANCIAL CORP., J. ROGER MOYER, JR., J. BRADLEY SCOVILL and TITO L. LIMA,<br><br>     Defendants. | Civil Action No. 07cv4652 (JGK)<br><br><u>CLASS ACTION</u> |
| CASTLE STRATEGIC TRADING, INC., Individually And On Behalf Of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> vs.<br><br>J. ROGER MOYER, JR., THOMAS DAUTRICH, GEORGE W. GRANER, EQUIPMENT FINANCE, LLC and BANK OF LANCASTER, N.A.,<br><br>     Defendants. | Civil Action No. 07cv5594 (JGK)<br><br><u>CLASS ACTION</u><br><br>ECF CASE |
| JEFFREY M. COOLEY, Individually And On Behalf Of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> vs.<br><br>STERLING FINANCIAL CORP., J. ROGER MOYER, JR., J. BRADLEY SCOVILL and TITO L. LIMA,<br><br>     Defendants. | Civil Action No. 07cv5671 (JGK)<br><br><u>CLASS ACTION</u><br><br>ECF CASE |

**TABLE OF CONTENTS**

**SECTION**                                                                                                                 **PAGE**

I. <u>INTRODUCTION</u>……………………………………….……………………………..1

II. <u>OVERVIEW</u>………………………………………………………………………..……….1

III. <u>ARGUMENT</u>………………………………………………………………..………..3

      1.       The New Mexico Funds Cannot Be Appointed
             <u>Lead Plaintiff Because Of Its Defective Certification</u>……...……………….…..3

      2.       The San Antonio, St. Louis Group Cannot Be Appointed
             <u>Lead Plaintiff Based On The Particulars Of Its Certifications</u>…………...……....5

      3.       District No. 9 Cannot Be Appointed Lead
             <u>Plaintiff Because It Is Subject To Unique Defenses</u> ……………………………..6

      4.       The Sterling Investor Group Does Not Satisfy
             <u>The Requirements For Group Representation</u>……………………………………7

      5.       The Miller Group Cannot Be Appointed Lead Plaintiff
             <u>Because It Does Not Have The Largest Financial Interest</u>………………………10

      6.       Kenneth Smith Cannot Be Appointed Lead Plaintiff
             Because He Does Not Have The Largest
             <u>Financial Interest And His Motion Was Not Timely</u>……………………….…10

IV. <u>CONCLUSION</u>………………………………………………………………….....…11

**I.     INTRODUCTION**

Proposed Lead Plaintiff Castle Strategic Trading, LLC ("Castle Trading" or "Proposed Lead Plaintiff"), respectfully submits this memorandum of points and authorities in further support of its motion for consolidation of the related actions, appointment as lead plaintiff, and approval of its selection of Stull, Stull & Brody and Kantrowitz, Goldhamer & Graifman, P.C. as co-lead counsel and the Weiser Law Firm, P.C. as liaison counsel, pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B).

Castle Trading hereby amends its original motion papers by submitting a revised damage calculation chart herewith to correct calculations set forth in its initial submission which resulted in an over-calculation of Castle Trading's cost-per-transaction values and, consequently, its estimated damages. Castle Trading's amended damage calculations reflect losses of $10,271.

**II.    OVERVIEW**

Presently pending before the Court are seven motions for appointment of lead plaintiff and lead counsel and consolidation of the above-captioned securities fraud class actions against Sterling Financial Corp. ("Sterling" or the "Company") and/or certain of the Company's wholly-owned subsidiaries and their officers and directors. In addition to the motion filed by Castle Trading, competing motions were filed by the following six movants: (i) Public Employees Retirement Association of New Mexico and New Mexico Educational Retirement Board (collectively, the "New Mexico Funds"); (ii) San Antonio Fire & Police Pension Fund and Employees Retirement System of the City of St. Louis (collectively, the "San Antonio, St. Louis Group"); (iii) District No. 9, I.A. of M. & A.W. Pension Trust ("District No. 9"); (iv) Financial Securities Company, Ronald Good and Linda Good (the "Sterling Investor Group"); (v) Paul A.

Miller and Regina A. Miller (the "Miller Group"); and (vi) Kenneth A. Smith ("Kenneth Smith").

The PSLRA requires that courts "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). In determining which class member is "the most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person . . . that:
>
>     \*       \*       \*
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The PSLRA's presumption may be rebutted by proof that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

As detailed in the moving papers and supporting submissions, as amended by Attachment A hereto, movant Castle Trading purchased 1,800 shares of Sterling Financial common stock during the period April 27, 2004 through May 24, 2007, and suffered estimated losses of $10,271 in connection therewith. The certification submitted by Castle Trading sets forth, *inter alia*, movant's willingness to serve as a lead plaintiff and a representative party on behalf of the Class, and its understanding that the certification is not a claim form and that sharing in any recovery is not dependent upon execution of the certification form. Castle Trading should be appointed as

2

lead plaintiff on behalf of the Class because it has suffered a significant loss in connection with its transactions in Sterling common stock and otherwise satisfies the requirements of Rule 23, while the additional lead plaintiff movants are subject to unique defenses and disqualification for the reasons detailed herein below.  Moreover, Castle Trading is an institutional investor and is thereby the type of sophisticated investor which Congress envisioned seeking to control securities fraud class action litigation when it enacted the PSLRA.  In re Vicuron Pharms. Inc. Sec. Litig., 233 F.R.D. 421, 427 (E.D. Pa. 2006) (intentions of Congress embodied in the PSLRA are that institutional investors should oversee more securities actions).  Accordingly, Castle Trading's motion should be granted.

### III.    ARGUMENT

#### 1.    The New Mexico Funds Cannot Be Appointed Lead Plaintiff Because Of Its Defective Plaintiff Certification

The PSLRA requires that a lead plaintiff movant "shall provide a sworn certification… which identifies any other action under this title, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve, or served as a representative party on behalf of a class."  15 U.S.C. § 78u-4(a)(2)(v).  The certification submitted by New Mexico Funds member Public Employees Retirement Association of New Mexico ("PERA") lists several actions in which it has either served or sought to serve in a representative capacity within the 3-year period preceding the date on which the certification is signed.  However, counsel's investigation has uncovered at least one other action which was required to have been included among the actions listed on PERA's sworn certification but was not.

The consolidated securities class action styled In re American International Group, Inc. Securities Litigation, No, 04-cv-8141 (S.D.N.Y.) ("In re AIG, Inc. Sec. Litig.") was filed on

October 15, 2004, and its constituent actions, of which there are at least 17, were each filed on or after October 18, 2004 (See excerpted docket sheet in the In re AIG, Inc. Sec. Litig. action, annexed hereto as Attachment B). Plaintiff's claims in the In re AIG, Inc. Sec. Litig. action arise under the federal securities laws, including Sections 10(b) and 20(a) of the Securities Exchange Act (See excerpted federal securities class action complaint filed in the In re AIG, Inc. Sec. Litig. action, annexed hereto as Attachment C, at 5). The docket in the In re AIG, Inc. Sec. Litig. action lists the Public Employees Retirement Association of New Mexico (i.e., PERA), as a lead plaintiff in the action (See Attachment B, at 2), though the order appointing lead plaintiff in that action (annexed hereto as Attachment D) appears to exclude PERA from among the appointed lead plaintiffs. Nevertheless, the certification submitted by the New Mexico Funds in connection with the instant action does not indicate that PERA sought to serve as a lead plaintiff in that action, as it is required to do under the express terms of the PSLRA, 15 U.S.C. § 78u-4(a)(2)(v) (See Declaration of Todd M. Moser in Support of Motion of the New Mexico Funds, Exh. 3). Moreover, because PERA's defective certification was executed by the New Mexico Fund's representative Gary King, the New Mexico funds may be subject to unique defenses as to its representative's adequacy and willingness to serve in a representative capacity. Additionally, the involvement of PERA and its co-movant New Mexico Education Retirement Board ("ERB") as lead plaintiffs in other actions, including PERA's undisclosed involvement in the In re AIG, Inc. Sec. Litig. action, may require the New Mexico Funds to devote their attention and resources to the prosecution of those actions, which could thereby seriously diminish its availability to fulfill the duties of lead plaintiff in the instant action. Additionally, the PSLRA requires that "each plaintiff seeking to serve as a representative party on behalf of a class provide a sworn certification, which shall be personally signed by such plaintiff…." (15 U.S.C. § 78u-

4

4(a)(2)(A)), however, the certifications submitted by PERA and ERB were not signed by Mr. King as Attorney General, but by Zachary Shandler, an Assistant Attorney General, for Gary King. Similarly, the Declaration of Gary King was not personally signed by Gary King (See Declaration of Todd M. Moser in Support of Motion of the New Mexico Funds, Exh. 3).

Accordingly, the New Mexico Fund's motion should be denied.

### 2. The San Antonio, St. Louis Group Cannot Be Appointed Lead Plaintiff Based On The Particulars of Its Certifications

The certifications submitted by each of the San Antonio, St. Louis Group members specify counsel retained by the Group members. San Antonio's certification states that it has retained Bernstein Litowitz Berger & Grossman LLP to serve as counsel. St. Louis' certification states that it has retained Berman, DeValerio Pease Tabacco Burt & Pucillo to represent it in this action. (See Declaration of Gerald H. Silk in Support of the Motion of the San Antonio, St. Louis Group, Exh. A-B)  Neither certification states that the San Antonio, St. Louis Group members are willing to serve as co-lead plaintiffs to be represented by co-lead counsel. Though the PSLRA does not require that the certifications include each movant's chosen counsel, the fact that these certifications affirmatively indicate specific counsel to represent them presents an inconsistency as to the delegation of responsibilities to other counsel in a co-lead counsel structure. Thus, the certifications raise a doubt as to the ability and/or willingness of the San Antonio, St. Louis Group members to adequately represent the proposed class, by satisfying a most basic of the lead plaintiff's responsibilities, i.e., the selection of counsel to represent it and the class.

Accordingly, the motion of the San Antonio, St. Louis Group should be denied.

### 3. District No. 9 Cannot Be Appointed Lead Plaintiff Because It Is Subject To Unique Defenses

The certification submitted by the District No. 9 movant demonstrates that it is not an adequate lead plaintiff and class representative because of its complete divestiture of its Sterling shares prior to the end of the Class Period.  (See Certification of Deborah R. Gross in Support of Motion of District No. 9, Exhibit A.)  The Class Period herein ends on May 24, 2007, yet District No. 9's certification demonstrates that it sold all of its 15,200 shares by May 2, 2007, more than three weeks before the bad news reached the market and caused the stock's decline.  Because its full sell-off preceded the end of the Class Period, District No. 9 will be subject to unique defenses as to loss causation under Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 343 (2005) and is, therefore, inadequate to serve in a representative capacity.  See In re Comverse Tech., Inc. Sec. Litig., 2007 U.S. Dist. LEXIS 14878, *16 (E.D.N.Y.) (loss causation considered in determination of lead plaintiff) (citing Id.).  District No. 9's motion should, therefore, be denied.

District No. 9 is also an inadequate class representative for the reason that its certification was executed by its administrative manager, and because administrative managers are not typically given the authority to initiate legal proceedings in a representative capacity.  Moreover, signature by the administrative manager may not render District No. 9's certification as having been "personally signed" in accordance with the requirement set forth in the PSLRA, 15 U.S.C. § 78u-4(a)(2)(A).

Accordingly, the motion of District No. 9 should be denied.

  **4.** **The Sterling Investor Group Does Not Satisfy**
    **The Requirements For Group Representation**

  Although there is no absolute bar against aggregating lead plaintiffs, it defeats the purpose of the PSLRA to allow aggregating losses of small investors to defeat a single investor who has larger losses than any individual member of the group. Moreover, when unrelated groups, like the Sterling Investor Group, cobbled together by counsel, serve as lead plaintiffs, the result is attorneys selecting clients rather than clients selecting attorneys. See, e.g., In re Network Associates, 76 F. Supp. 2d 1017, 1023 (N.D. Cal. 1999) ("to allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation."). Indeed the Sterling Investor Group has not proffered any evidence that it was not "artificially created" by counsel. See In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 455 (S.D. Tex. 2002).

  There is no reason for the Sterling Investor Group to exist except as a vehicle for plaintiffs' counsel to increase the amount of losses they represent in the hope of securing the role of lead counsel. Moreover, because the Sterling Investor Group lacks any pre-existing structure or decision-making processes, there is no evidence that it can manage the litigation as effectively or efficiently as Castle Trading. In keeping with this understanding, many courts have determined that groups comprised of unrelated group members cannot serve as lead plaintiff. See In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 813 (N.D. Ohio 1999) (rejecting motion of group to serve as lead plaintiff because group could not make decisions and observing that a lead plaintiff group should be "more than a mere assemblage of unrelated persons who share nothing in common other than the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreements with the same attorney."); In re Milestone Scientific Sec. Litig., 183 F.R.D. 404, 417-18 (D.N.J. 1998) (noting that "[w]hile the PSLA refers to 'a person or

7

group of persons' as capable of serving as the lead plaintiff, the surrounding statutory language forecloses the appointment of multiple groups or multiple persons not part of a cohesive group").

Although courts have held that the fact of unrelatedness, *per se*, does not preclude appointment of a group (see In re Cendent Corp. Litig., 264 F.3d at 266), they do note that "[w]e do not intimate that the extent of the prior relationships and/or connection between the members of a movant group should not enter into the calculus of whether that group would 'fairly and adequately protect the interests of the class.'" Id., at 266-67. Indeed,

> [i]f, for example, a court were to determine that the movant "group" with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that "group" could not be counted on to monitor counsel in a sufficient manner.

Id. In expressing its opinion, the Third Circuit cited favorably In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 207-08 (S.D.N.Y. 2001), explaining that the Razorfish court,

> refus[ed] to appoint as lead plaintiff a group that, in the court's view, was "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel.'

In re Cendent Corp., 264 F.3d at 267.

The sheer number of lead plaintiffs in a group, therefore, is not the essential problem that troubles courts, "the root of the problem lay in the appointment of a 'group' of disparate investors whose only common link was class counsel." In re Network Associates, Inc. Sec. Litig., 1999 U.S. Dist. LEXIS 21484, at *3 (N.D. Cal. Nov. 22, 1999). The fundamental problem with any amalgamation of any size into a "group" is the dilution of the control that the members of the group have over counsel to run the litigation.

Nothing in the record here suggests that the Sterling Investor Group is anything more than an aggregation of disparate and unrelated class members, as between Financial Securities Co. and Ronda/Linda Good, that are being proffered in the aggregate solely for the purpose of being appointed lead plaintiff and, in turn, selecting the counsel that cobbled the "group" as lead counsel. Indeed the Sterling Investor Group has not proffered any concrete benefit or value added that will inure to the Class by the addition of multiple lead plaintiffs. Moreover, there is no indication that the members of the Sterling Investor Group have grappled with, much less resolved, the difficult decision-making protocols that are necessary for a group to serve as lead plaintiff.

Allowing lawyers to designate unrelated plaintiffs as a group and aggregate their transactional losses – as is the case with the Sterling Investor Group – "allow and encourage lawyers to direct the litigation." See In re Donnkenny Inc. Sec. Litig., 171 F.R.D. 156, 158 (S.D.N.Y. 1997). This is precisely the lawyer-driven type of litigation that Congress intended to replace by the enactment of the PSLRA. See H.R. Conv. Rep. No. 104-369, at 31-35 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 730-34.

Given the absence of any pre-existing relationship and lack of any benefit that would inure to the Class from a group acting as lead plaintiff (see in re Waste Mgmt., Inc. Sec. Litig., 128 F. Supp. 2d 401, 413 (S.D. Tex. 1999), the Court should deny the Sterling Investor Group's motion. See In re Pfizer Inc. Sec. Litig., 2005 U.S. Dist. LEXIS 24891, at *7 (S.D.N.Y. Oct. 25, 2005).

### 5. The Miller Group Cannot Be Appointed Lead Plaintiff <u>Because It Does Not Have The Largest Financial Interest</u>

The memorandum of law submitted in support of the motion of the Miller Group indicates that it expended $11,724 (See Memorandum of Law in Support of Motion of the Miller Group, at 4), in connection with its purchase of Sterling shares. The Miller Group does not provide a damage calculation, much less a calculation which takes into account the residual value of its Sterling holdings, which, as of July 18 equaled $10.71 multiplied by the number of shares held, for a total Miller Group loss of approximately $5,620, which is considerably less than the $10,271 loss sustained by movant Castle Trading. Accordingly, the Miller Group is not the lead plaintiff movant with the largest financial interest that otherwise satisfies the requirements of Rule 23. In accordance with the PSLRA, the motion of the Miller Group should, therefore, be denied. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).

### 6. Kenneth Smith Cannot Be Appointed Lead Plaintiff Because He Does Not <u>Have The Largest Financial Interest And His Motion Was Not Timely Filed</u>

The motion of Kenneth Smith reflects a loss of approximately $5,998 (See Memorandum of Law in Support of Motion of Kenneth Smith, at 3), which is considerably less than the $10,271 loss sustained by movant Castle Trading. Accordingly, Kenneth Smith is not the lead plaintiff movant with the largest financial interest that otherwise satisfies the requirements of Rule 23. In accordance with the PSLRA, the motion of Kenneth Smith should, therefore, be denied. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(bb). Additionally, the PSLRA requires that, "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to be appointed as lead plaintiff of the purported class." 15 U.S.C. § 78-u4(a)(3)(A)(i)(II). Notice of pendency of the action was published over Market Wire on May 25, 2007 (See Declaration of Brent W. Landau in Support of Motion of Kenneth A. Smith, Exhibit

10

Exhibit A).  Sixty days from May 25, 2007 is July 24, 2007.  The case docket in the first-filed action, <u>Buckwalter v. Sterling Financial Corp.</u>, No. 07-cv-2171 (E.D. PA), shows that Kenneth Smith's lead plaintiff motion was not filed until July 25, after the time period allowed under the PSLRA for the filing of such motions had expired.  Accordingly, the motion of Kenneth Smith should be denied.

**IV.    CONCLUSION**

Based on the foregoing, Castle Trading respectfully requests that the Court grant its motion for consolidation, appointment as lead plaintiff and approval of selection of lead counsel.

Dated: August 9, 2007

Respectfully submitted,

**STULL, STULL & BRODY**

By: s/ Jason D'Agnenica
Jules Brody
Howard Longman
Jason D'Agnenica (JD-9340)
6 East 45th Street
New York, NY 10017
Tel: (212) 687-7230

**KANTROWITZ, GOLDHAMER
 & GRAIFMAN, P.C.**
Gary S. Graifman
Michael Braunstein
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
(845) 356-2570

**Counsel for Movant Castle Strategic
Trading, LLC and Proposed Co-Lead
Counsel For Plaintiffs and The Class**

11